# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff<br><br>v.<br><br>**[5] SAMUEL LAMONTE DRAPER,**<br><br>Defendant. | Criminal No. 4:23-cr-00358 |

## UNITED STATES RESPONSE IN OPPOSITION TO DEFENDANT'S REQUEST FOR REVOCATION OF DETENTION ORDER
## (ECF No. 93)

The United States of America, through undersigned counsels, respectfully requests the Court deny defendant, Samuel Lamonte Draper's (hereafter, "Defendant"), motion for revocation of detention order and in request of new detention hearing. Defendant asserts in his motion that he should be released because there is no longer concern that he would fail to appear because his state criminal charges for have been dismissed. However, the Magistrate Judge detained the Defendant because the Magistrate Judge found the Defendant had not rebutted the presumption in this case and found the Defendant was a danger to the community, not due to a concern he might not appear. The Defendant has presented no evidence to rebut the presumption in this case or that he would not be a danger to himself or the community. Defendant's motion for revocation of detention order should be denied without the need for a hearing.

## I. PROCEDURAL BACKGROUND

On August 16, 2023, a federal grand jury in Houston, Texas, returned an indictment charging Defendant with conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951(a); conspiracy to possess with the intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 846; attempt to possess with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2. (ECF 1).

On September 25, 2023, the Defendant was arrested by federal authorities when a Writ for Habeas Corpus ad Prosequendum was executed. At that time, the Defendant was in pretrial detention in Harris County for engaging in organized criminal activity for his participation in the theft of an ATM machine on July 28, 2023.

## II. THE DETENTION HEARING

On September 25, 2023, a combined arraignment and detention hearing was held before Honorable Magistrate Judge Sam S. Sheldon (hereafter, "Magistrate Judge Sheldon"). (ECF 67). During the detention hearing, the government presented the following evidence to support the Defendant's detention:

Between on or about July 24 and July 26, 2023, a FBI confidential human source (CHS) informed Defendant Trayvon Maxwell that 122 kilograms of cocaine was being delivered by a Mexican drug trafficking organization to a location in Houston. Maxwell indicated that he would arrange for a crew to meet at a Residence Inn in Houston, TX. The crew would steal the cocaine – keeping 100 kilograms and giving the CHS 22 kilograms.

On July 27, 2023, the Defendant and his co-defendants met at the Residence Inn. There, a plan was discussed to steal the 122 kilograms of cocaine which they learned was located in an abandoned pump house in a golf course located at 16019 Clay Road, Houston TX, which is located in the Southern District of Texas.

At approximately 11:40 a.m., the Defendant and his co-defendants loaded into four (4) vehicles to head to the target location – a pump house at an abandoned golf course – to conduct the drug robbery. Male 1 got into a White Hyundai Sonata, was the only occupant. Maxwell (driver), Emanuel Winnfield (front passenger), Herman Mitchell (rear passenger side) and Male 2 (rear driver side) entered a red Toyota Camry. Defendant (driver) and Jeremy Jenkins entered a grey Dodge Charger; however, prior to departing the hotel, Jenkins then got into the Mitsubishi Outlander with Derek Butler (driver). The four vehicles departed the Residence Inn heading towards the golf course. Butler's Outlander was in the lead, followed by Defendant's Charger, Maxwell's Camry, and Male 1's Hyundai. Aerial surveillance video recorded the convoy as it headed from the Residence Inn to the target location.

When they arrived at the target location, Defendant pulled the Charger into a 7/11 across the street from the target location. He reversed into a parking spot so that allowed him to have a view of the gate to the target location. Butler's Outlander and Maxwell's Camry drove past the target location. Male 1 stopped at the gate and he got out of the vehicle and opened it. While he was working to open the gate, Butler's Outlander and Maxwell's Camry drove back and forth up the road awaiting entry.

Male 1 got out of the vehicle and opened the gate. Once he did so, he got into his vehicle and pulled it inside the gate. Once it opened, Butler's Outlander pulled next to DRAPER's Charger

near at the 7/11. Jenkins exited the Outlander and got into the Charger. Maxwell's Camry drove through the gate toward the pump house. It and stopped short of the pump house.

Video surveillance showed the four individuals got out of the vehicle. They were wearing masks, gloves, and other clothing to disguise their appearance. However, law enforcement has been able to identify Maxwell, Winnfield, and Mitchell based on their clothing, observing them at the Residence Inn and having the vehicle on continuous surveillance since it departed the hotel.

Video surveillance in the building showed the armed individuals enter the building and search for the cocaine. The four advanced on the pump house and kicked in the door. When they entered, they possessed long guns and handguns with extended magazines. The four conducted a sweep of the location and tactical search. They searched for the cocaine but did not find any.

At about the time the four persons entered the target location, Defendant's Charger left the 7/11 and entered the property, however, he stopped before reaching the pump house. Shortly, thereafter, the Camry and the Charger left the target location at a high rate of speed. All four vehicles left the Golf Course going north on HWY 6. They did several "Heat Runs" (actions taken to avoid police) in various neighborhoods before turning back and heading back to Southeast Houston.

HPD officers stopped the Defendant's vehicle for a traffic stop. He was removed the Dodge Charger and a patted down. However, Jenkins was not removed from the vehicle and the vehicle was not searched. Both were allowed to depart.

In the early hours of July 28, 2023, HPD officers in Northeast Houston were on patrol scouting for a serial burglary crew which were robbing ATMs in the area. At approximately 3:45 a.m., they observed three vehicles, to include the red Toyota Camry discussed above, traveling in tandem. The vehicles appeared to be scouting businesses near the 6900 block of Martin Luther

King Boulevard in Houston Texas. The vehicles pulled in near a business and the red Toyota Camry appeared to be acting as surveillance. HPD Northeast officers had previously identified the red Toyota Camry as being used as a lookout vehicle by a serial burglary crew.

Around that time, HPD officers heard an alarm sounding from a business. HPD officers went to the business, saw it had been broken into and the ATM machine had been robbed. HPD officers investigating the burglary located several vehicles that were involved in the burglary, to include the red Toyota Camry and gave chase. Officers turned on their lights and sirens to stop the red Toyota Camry, however, the driver, later identified as the Defendant, disregarded the officers, and accelerated to escape.

Defendant eventually stopped the vehicle and he, and the passengers ran from the police. HPD officers pursued and they eventually located him in a back yard. Officers ordered him down on his stomach, and when they attempted to detain him, he reached for the officer's duty rifle. HPD officers prevented this and handcuffed him. Nearby, they found the ATM cassette from the burglary with the money still inside.

Defendant was taken to HPD offices where he was advised of his *Miranda* rights, acknowledged, and waived those rights. He said he was driving the red Toyota Camry and his job was to conduct surveillance and be the lookout for police. He was arrested.

On September 25, 2023, Defendant was interviewed by Federal Bureau of Investigation (FBI) agents and TFOs. He was advised of his rights, acknowledged those rights, and agreed to talk to agents. Defendant stated that he drove the red Toyota Camry to the Residence Inn on July 27, 2023 because one of the individuals had rented it from his cousin. When asked why he was driving the Dodge Charger, he stated that he needed a ride home since the red Toyota Camry was rented. When asked why he drove through the gate and into the golf course, he said he did so

because he needed to the get the red Toyota Camry from the people and return it to his cousin. He denied knowing any information as to the plan or what was going on that day.

After evaluating the evidence and the parties' arguments, the Magistrate Judge Sheldon ordered Defendant detained after ruling that Defendant had not overcome the rebuttable presumption and that he was a danger the community. (ECF No. 71).

### III. SCOPE OF REVIEW

If a magistrate judge orders the release or detention of a defendant, either party may move the district court for a revocation of the order. Title 18 U.S.C. § 3145(a). A district court reviews the magistrate judge's order de novo. *United States v. Tortora*, 922 F.2d at 883 n. 4 (1st Cir.1990); *United States v. Thibodeaux*, 663 F.2d 520, 522 (5th Cir. 1981) (analyzing former section 3147); *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985); *United States v. Koenig*, 912 F.2d 1190, 1191–92 (9th Cir.1990); *United States v. Leon*, 766 F.2d 77, 80 (2d Cir.1985); *United States v. Delker*, 757 F.2d 1390, 1394–95 (3d Cir.1985); *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir.1985). A district court may take additional evidence or conduct a new evidentiary hearing when appropriate. *Fortna*, 769 F.2d at 250.

### IV. DE NOVO HEARING IS DISCRETIONARY

The district court has the discretion to conduct its de novo review by examining the pleadings and the evidence which was developed before the magistrate judge and then adopting the magistrate judge's pretrial detention order without the need for a hearing. *United States v. Ruth*, No. 22-50784, 2022 WL 6316461, at 1 (5th Cir. 2022); *United States v. Hensler,* 18 F.3d 936 (5th Cir. 1994) (unpublished); *United States v. Ashley*, 850 F.App'x 270, 271 (5th Cir. 2021)(unpublished); A *de novo* review by the court does not mean a *de novo* hearing. *United States*

*v. King*, 849 F.2d 485, 489–90 (11th Cir.1988), *United States v. Baker*, 703 F.Supp. 34 (N.D.Tex.1989); *United States v. Boado*, 835 F. Supp. 920, 921 (E.D. Tex. 1993); *United States v. Sophie*, 900 F.2d 1064, 1071 (7th Cir.1990) ("An evidentiary hearing is necessary only if the party requesting the hearing raises a significant, disputed factual issue."). When the district court makes its *de novo* determination, the parties do not have a *right* to present evidence not submitted to the magistrate judge. However, the court retains the discretion to consider additional evidence. *United States of Am. v. Ramirez-Ramirez*, No. CR H-23-565, 2024 WL 1340256, at *3 (S.D. Tex. Mar. 28, 2024); *United States v. Boado*, 835 F. Supp. 920, 921 (E.D. Tex. 1993); *United States v. Kyle*, 49 F. Supp. 2d 526, 527 (W.D. Tex. 1999); *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir.1998) (citing *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir.1994); See also *United States v. Vasconcellos*, 519 F. Supp. 2d 311, 314 (N.D.N.Y. 2007).

## V. LAW APPLICABLE TO DETENTION

### a. Danger to the Community of Federal Drug Offenders

A rebuttable presumption arises that the defendant is a flight risk if there is probable cause to believe that he has committed a federal drug offense carrying a maximum prison term of ten years or more, as in the present case. 18 U.S.C. § 3142(e). A second rebuttable presumption of dangerousness arises against a defendant if there is probable cause to believe he committed a federal drug offense carrying a maximum prison term of ten years or more. 18 U.S.C. § 3142(e). A finding that the defendant is a risk to the safety of any other person or the community is sufficient to detain a defendant pending trial. *United States v. Salerno*, 481 U.S. 739 (1987). A defendant may be detained on the ground of danger to the community even where there is no showing that he is likely to engage in physical violence. The legislative history of The Federal

Bail Reform Act of 1984 (18 U.S.C. § 3141-3149) indicates that Congress regards drug trafficking as dangerous. Senate Report No. 225, pp. 12-13.

Once the presumption is triggered, the defendant may rebut the same by producing conflicting evidence to undercut the presumption as to the risks of danger and flight. *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992); *United States v. Jessup*, 757 F.2d 378, 383 (1st Cir.1985) (partially abrogated on other grounds by United States v. O'Brien, 895 F.2d 810, 814 (1st Cir.1990) (abrogating Jessup only as to the standard of appellate review). The defendant is required to produce rebutting evidence to the contrary, while the government maintains the burden of persuasion. *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989). However, the presumption is not a mere "bursting bubble" that totally disappears from the judge's consideration after the defendant comes forward with evidence. *Id.* Thus the mere production of evidence does not completely rebut the presumption, and in making its ultimate determination, the court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society. *Hare*, 873 F.2d at *798–99; Fortna,* 769 F.2d at 251.

Detention can be based on a showing either as to the defendant's flight risk or the defendant's risk to the safety of any other person or the community. 18 U.S.C. § 3142(f); *Fortna*, 769 F.2d at 243. In determining whether to detain the defendant, the court may consider the finding of Congress that drug offenders pose a special risk of flight and dangerousness. *Rueben*, 974 F.2d at 586.

      b. *Magistrate Judge Sheldon Found the Defendant was a Danger to the Community*

Magistrate Judge Sheldon ordered the Defendant to be detained because he found that a rebuttable presumption existed that there was probable cause to believe the Defendant committed "an offense for which a maximum term of 10 years or more is prescribed in the Controlled

Substances Act" and he committed "an offense under 18 U.S.C. §§ 924(c), 956(a) or 2332(b)". (ECF. 71).

As Magistrate Judge Sheldon noted, the Defendant presented no evidence to rebut the presumption in this case. In his current motion, the Defendant again has not presented any evidence to rebut these presumptions. After reviewing the evidence presented by both parties, Magistrate Judge Sheldon found that no combination of conditions would reasonably assure the safety of any other person and the community and he noted the following factors weighed against the Defendant and necessitated detention such as:

(1) Weight of the evidence against the defendant is strong;
(2) Defendant is subject to a lengthy period of incarceration if convicted;
(3) Defendant's prior criminal history;
(4) Defendant's participation in criminal activity while on probation, parole or supervision;
(5) Lack of stable employment;
(6) Prior attempt(s) to evade law enforcement; and,
(7) Prior violations of probation, parole or supervision.

*See* ECF 71.

The Defendant does not address any of these factors in his request for reconsideration. Rather, he only notes that a prior state charge has been dismissed against so he is therefore likely to appear as the reason the Defendant should be released.[1] However, securing the Defendant's appearance was not the reason that Magistrate Judge Sheldon detained the Defendant. He was detained due to the danger to others and the community and the factors listed above which the Defendant has not addressed.

Nothing the Defendant has presented in his reconsideration request has rebutted the presumption in this case or shown he is not a danger to the community. Therefore, the

---

[1] The charges were dismissed against the Defendant due to the current federal indictment. (Exhibit 1).

Defendant's request should be denied.

## VI. SECTION 3142(G) FACTORS WEIGH IN FAVOR OF DETENTION

Defendant's appeal of the detention order in this case focused almost exclusively on his ability to appear, but ignored the fact that Magistrate Judge Sheldon ordered his detention due to the Defendant's danger to the community and not whether he would appear at trial. The Defendant presented no evidence to rebut the presumptions in this case and he remains a danger to the community. In this case, an examination of the § 3142 factors demonstrates that the detention order should remain in place.

### a. *Nature and Circumstances of the Offense*

The first factor to be considered is the nature and circumstances of the offense charged including whether the offense is a controlled substance offense. Defendant in this case was part of a crew that attempted to rob a Mexican drug cartel of 122 kilograms of cocaine. Defendant provided the vehicle, a Toyota Camry, for the armed individuals to use to conduct the robbery and he himself attempted to gain entry to the robbery location before departing when the robbery crew realized the cocaine was gone. Defendant then participated in another armed robbery that evening using the Toyota Camry. He fled from law enforcement and when they attempted to arrest him, he tried to take the officer's weapon. Therefore, this factor weighs in favor of detention.

### b. *Weight of the Evidence and History and Characteristics of the Defendant*

The second and third factors to be considered by the Court are the weight of the evidence and the history and characteristics of the defendant. As summarized above, the weight of the evidence of Defendant's participation in a drug trafficking crime and additional criminal activities is strong.

As to his history and characteristics, as previously detailed, Magistrate Judge Sheldon found that the Defendant's prior criminal history, his attempts to evade law enforcement and his participation of criminal activity while on probation, parole or supervision as reasons to detain him.

Non-compliance with prior conditions of release and or conditions of supervision imposed by the Court weights in favor of detention. *United States v. Flores*, 53 F.4th 313, 316 (5th Cir. 2022) (defendant had violated probation conditions in the past); *United States v. Cantu*, 935 F.2d 950, 951 (8th Cir. 1991) (violated the terms of his probation and was indicted while still on probation); *United States v. Booker*, No. 1:08-CR-16(4), 2013 WL 12350014, at *1 (E.D. Tex. Nov. 25, 2013) (history of bail violations and failing to cooperate with probation officer); *United States v. Scales*, 344 F. Supp. 2d 213, 216 (D. Me. 2004) (prior history of violating bail conditions, even when the violations did not lead to revocation); *United States v. Lunnie*, 451 F. Supp. 3d 995, 1001 (E.D. Ark. 2020) (history of noncompliance an absconding); *United States v. Moffitt*, 527 F. Supp. 2d 474, 479 (W.D.N.C. 2006) (probation violation). Thus, both factors favor detention in this case.

      c. *The Nature and Seriousness of the Danger to any Person or the Community that would be posed by the Defendant's Release*

Harm to society caused by narcotics trafficking is encompassed within Congress' definition of "danger" in Bail Reform Act of 1984, 18 U.S.C.A. § 3141 et seq., and nature and seriousness of danger to community that would be posed by a person's release is factor that should be considered in determining whether defendant should be detained pending trial. 18 U.S.C.A. § 3142(g). *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985). "[W]e recognize the congressional determination that large scale drug trafficking is a serious danger to the community and that a drug

11

network has the ability to continue to function while one of its members awaits trial. See *United States v. Portes*, 786 F.2d 758, 765 (7th Cir.1985). We further recognize that either danger to the community or risk of flight is sufficient to authorize detention." *United States v. Sazenski*, 806 F.2D 846 (8th Cir. 1986) (internal citations omitted) (emphasis added).

In the present case, the Defendant, agreed to provide the vehicle and act as a lookout and participant in the cocaine robbery crew where members used firearms as they breached the building. They anticipated finding Mexican drug members with the cocaine which would have likely resulted in a gun battle. Later that evening, the Defendant provided a vehicle and worked as a lookout for another robbery crew. When the police attempted to arrest him, he took them on a high speed chase, abandoned his vehicle and ran. When they eventually caught up to him, he attempted to grab the officer's weapon.

Danger to the community is not equivalent to a threat of physical violence. A propensity to commit crime based on prior criminal history or other acts, proven by clear and convincing evidence, is sufficient to support detention based on dangerousness. *Hare*, 873 F.2d at 799 (5th Cir. 1989) (likelihood that defendant would continue drug dealing); *United States v. Cisneros*, 328 F.3d. 610, 619 (10th Circ. 2003) (Government presented evidence of identifiable and articulable threat to an individual or the community from potential corruptions acts by the defendant); *United States v. Harrison*, 354 F. Supp. 3d 270, 276 (W.D.N.Y. 2018) (cyberstalker was a danger to the community due to potential crimes). Thus, the factor warrants detention.

### VII. CONCLUSION

In the present case, as previously ruled by Magistrate Judge Sheldon, the government was able to prove by preponderance of the evidence that Defendant is a risk of flight and a danger to

the community.  The United States further contends that the dismissal of the Defendant's state criminal charged as proffered by Defendant in his recent motion would be insufficient overcome the evidence presented by the government and the presumption of the Defendant's dangerousness to the community.

For these reasons, the United States respectfully requests this Court to confirm the detention order by Honorable Magistrate Judge Sam Sheldon without the need for a hearing and denied the Defendant's motion.

Respectfully submitted,
ALAMDAR HAMDANI
United States Attorney
Southern District of Texas

By:

*Ralph Paradiso*
Kelly Zenón-Matos
Assistant United States Attorney
Ralph Paradiso
VCRS Trial Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

*Ralph Paradiso*
TRIAL ATTORNEY