|     |     |     |
| --- | --- | --- |
| 1   | IN THE UNITED STATES DISTRICT COURT | |
| 2   | FOR THE SOUTHERN DISTRICT OF TEXAS | |
| 3   | HOUSTON DIVISION | |
| 4   | UNITED STATES OF AMERICA § | CASE NO. 4:23-CR-358-5 |
|     | § | HOUSTON, TEXAS |
| 5   | VERSUS § | THURSDAY, |
|     | § | SEPTEMBER 28, 2023 |
| 6   | SAMUEL LAMONTE DRAPER § | 9:40 A.M. TO 9:59 A.M. |

**DETENTION HEARING**

BEFORE THE HONORABLE SAM SHELDON
UNITED STATES MAGISTRATE JUDGE

APPEARANCES: SEE NEXT PAGE

ELECTRONIC RECORDING OFFICER: BENJAMIN ROMERO

TRANSCRIPTION SERVICE BY:

JUDICIAL TRANSCRIBERS OF TEXAS, LLC
935 Eldridge Road, #144
Sugar Land, TX 77478
281-277-5325
www.judicialtranscribers.com

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1                       **APPEARANCES:**

2

3  FOR THE PLAINTIFF:           US ATTORNEY'S OFFICE
                                Ralph Paradiso, Esq.
4                               1000 Louisiana St., Ste. 2300
                                Houston, TX  77002
5                               713-567-9000

6

7  FOR THE DEFENDANT:           THE MERCHANT LAW FIRM
                                Feroz F. Merchant, Esq.
8                               440 Louisiana St., Ste. 200
                                Houston, TX  77002
9                               713-224-8200

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1 **INDEX**

2

3 WITNESS:            Direct      Cross       Redirect    Recross

4 JUSTIN KENNEDY
   By Proffer         6           .           .           .
5  By Mr. Merchant    .           7           .           .

6

7 EXHIBITS:                       Received

8 Government's Exhibit 1          6
   Government's Exhibit 2          6
9

10                              ***

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**HOUSTON, TEXAS; THURSDAY, SEPTEMBER 28, 2023; 9:40 A.M.**

   THE COURT: Let's go with Samuel Lamonte Draper.

   MR. PARADISO: Ralph Paradiso for the United States.

   THE COURT: Okay.

   MR. MERCHANT: Good morning, Judge. Feroz Merchant for Mr. Draper.

   THE COURT: Okay. Good morning, sir.

   You Mr. Draper?

   DEFENDANT DRAPER: Yes, sir.

   THE COURT: Okay. So has he been arraigned yet or not?

   MR. PARADISO: I don't believe so.

   THE COURT: No? Have you had an opportunity to review the Indictment with him?

   MR. MERCHANT: I have.

   THE COURT: And do you wish to waive formal reading, enter a plea of not guilty and request a jury trial?

   MR. MERCHANT: Yes, Your Honor.

   THE COURT: And does he want to go forward with the Detention Hearing?

   MR. MERCHANT: Yes, Your Honor.

   THE COURT: So you-all can sit -- you can sit during the hearing, so why don't you just sit with him right

```
 1  at the table behind me?
 2              DEFENDANT DRAPER:  Yes, sir.
 3              THE COURT:  Okay.  So let's do this:  Is it okay
 4  if he sits next to him?
 5              THE MARSHAL:  Yes, Your Honor.
 6              THE COURT:  Okay.  And you can sit, too.  You
 7  don't have to stand.
 8              Mr. -- we're trying -- how I do these things is
 9  the Government's provided -- you-all can sit down.
10        (Pause in the proceedings.)
11              THE COURT:  So what I do, Mr. Merchant, is I --
12  how I conduct these hearings, has the Government provided
13  you with their proffer?
14              MR. MERCHANT:  Yes, sir.
15              THE COURT:  Okay.  So what I do is I admit that
16  with your okay as Exhibit 1 and then I admit the Pretrial
17  Report as Exhibit 2.  Then I bring up the agent here.  I
18  swear in the agent and then I turn it over to you for
19  cross-examination, then after we do that, I ask you if
20  there's anything that you want to proffer to me.
21              So let me start with:  Do you have any objection
22  for the limited purpose of this hearing as admitting
23  Government's proffer as Exhibit 1?
24              MR. MERCHANT:  No, sir.
25              THE COURT:  Okay.  And any objection to marking
```

1  the Pretrial Report as Exhibit 2?
2           MR. MERCHANT:  No, sir.  But I believe there is an
3  error.
4           THE COURT:  Yeah, so I'll have you tell me those.
5           So we'll put them in and then you'll explain to me
6  and then we'll discuss that.
7     (Exhibits 1 and 2 received in evidence.)
8           MR. MERCHANT:  Yes, sir.
9           THE COURT:  So let's just start with:  Who is the
10 agent that's going to testify?
11          MR. PARADISO:  Sergeant Justin Kennedy, Your
12 Honor.
13          THE COURT:  Okay, great.  If you can come forward?
14    (Witness sworn.)
15          THE COURT:  So just pull the microphone close so
16 we get it.
17          THE WITNESS:  Yes, sir.
18                    EXAMINATION BY PROFFER
19          THE COURT:  Sir, can you state your name for the
20 Record?
21          THE WITNESS:  My name is Justin Kennedy.
22          THE COURT:  And who are you currently employed by?
23          THE WITNESS:  The Houston Police Department.
24          THE COURT:  And what's your position?
25          THE WITNESS:  I'm a Sergeant on one of the

1 pro-active gang squads.

2 THE COURT: And have you had an opportunity to
3 review what we've already admitted as Government's
4 Exhibit 1?

5 THE WITNESS: Yes, sir.

6 THE COURT: And is everything in there true and
7 correct?

8 THE WITNESS: To the best of my knowledge, yes,
9 sir, it is.

10 THE COURT: Okay. Go ahead, Mr. Merchant with
11 your cross-examination.

12 CROSS-EXAMINATION
13 BY MR. MERCHANT:
14 Q    Good morning, sir.
15 A    Good morning.
16 Q    Can you hear me?
17 A    Yes, sir.
18 Q    My name is Feroz Merchant and I represent Mr. Draper.
19      It says over here that on July 24th, 2023, that you-all
20 made contact with Defendant Maxwell?
21 A    Yes, sir.
22 Q    And when you say you-all made contact, who made
23 contact?
24 A    This was with a source that we were using on the
25 investigation.

1  Q    Okay.  And when you made contact with Mr. Maxwell was
2  because you-all believed Mr. Maxwell was part of a gang?
3  A    That was part of it, but not all of it, yes, sir.
4  Q    What else was it?
5  A    We had -- through our investigation, we identified a
6  group, including Mr. Maxwell, that was actively involved in
7  committed aggravated robberies.
8  Q    And when you say he -- Mr. Maxwell was part of a group,
9  at that point in time do you believe Mr. Draper was part of
10 that group, as well?
11 A    Through the initial contact?
12 Q    Yes, sir.
13 A    No, sir.  We had not been identified yet.
14 Q    Okay.  And you-all had a confidential source, correct?
15 A    Correct.
16 Q    All right.  And that was on July 24th, and the
17 confidential source -- were they wired?
18 A    Were they wired?
19 Q    Yes, sir.
20 A    I'm not aware of that, if they were wired or not.
21 Q    Was there any recordings during the confidential
22 source's communication with Mr. Maxwell or any other members
23 of the group?
24 A    Yes, sir.
25 Q    And was that recording on the initial meeting?  And was

1  that in person?
2  A    Any time that we have communication between potential
3  suspects, it's recorded.
4  Q    Okay.  But on July 24th we didn't know about Mr. Draper
5  and he wasn't a target at that time, correct?
6  A    As it pertains to this specific investigation, no, sir,
7  he was not.
8  Q    Okay.  And so I'm assuming that we're just talking
9  about this investigation and nothing else.  Would that be
10 correct?
11 A    Yes, sir.
12 Q    Okay.  So in relation to this investigation, on
13 July 24th we don't know anything about Mr. Draper, we don't
14 know whether he's involved in a gang or not, he's just not
15 on the radar?
16 A    I can't say that he's not on the radar at all.  We knew
17 about Mr. Draper, but we didn't know about Mr. Draper's
18 involvement on the day that this incident happened, not on
19 the 24th, we didn't, if that makes sense.
20 Q    Well, on the 24th, what did you know about Mr. Draper?
21 A    All we knew about Mr. Draper is who he associated with
22 and the areas that he hung out in.
23 Q    So he's just somebody in that neighborhood or area that
24 lives there?
25 A    Well, we had identified Mr. Draper previously, just

1  with some other gang members that we had seen him hanging
2  out with.  But as far as him being actively involved in a
3  crime, we didn't have intelligence on that at the time.
4  Q    Thank you.
5  A    Yes, sir.
6  Q    Then on July 26th, the confidential source told Maxwell
7  about, I guess, 122 kilos of cocaine.  Would that be
8  correct?
9  A    Yes, sir.
10 Q    And obviously the confidential source works with you or
11 your group?
12 A    Yes, sir.
13 Q    And so there isn't any 122 kilos, correct?
14 A    No, sir.
15 Q    So you came up with 100 -- who came up with the number?
16            THE COURT:  Okay.  So Mr. Merchant, look, so a
17 grand jury has already found probable cause and so I
18 understand all of that.  Like, I want you to focus on what
19 can help me give your client a bond so because this isn't a
20 discovery hearing.  A grand jury has already found probable
21 cause, and I know exactly what happened because we've had
22 other hearings here, and I'm the ultimate decision-maker,
23 and so I want you to focus on the incident that happened and
24 then -- and then what happened at his arrest.
25            MR. MERCHANT:  Yes, sir.

       THE COURT: Okay.
BY MR. MERCHANT:
Q    When did Mr. Draper first come into your sights in reference to this incident?
A    On July 27th.
Q    And could you explain how that came about?
A    Yes, sir. The day that this incident occurred, surveillance was set up on Mr. Maxwell that you had mentioned before, and based on surveillance with him, we intercepted several other suspects that had shown up to meet, essentially, before they were to go do what they believed was an aggravated robbery.
     Mr. Draper showed up that day driving a red Toyota Camry. That's the first time that we knew of his involvement in this incident.
Q    Okay. And when he showed -- when you first saw him in the red Camry, was that at the Residence Inn?
A    Yes, sir. That was at the hotel.
Q    Okay. And thereafter, based on your report -- or the summary provided to the Court, is your position -- and correct me if I'm wrong -- is that he was the lookout?
A    He was one of the original lookouts, yes, sir.
Q    And after looking -- parked at a convenience store looking at the warehouse, for lack of a better term, what else did he do?

1  A    Mr. Draper actually entered the facilities.  As far as
2  you can envision like the enclosure, the main enclosure, he
3  did it -- not just stay at that convenience store as you
4  were saying a second ago.  He actually entered.
5  Q    And when you say entered into the parking area inside
6  the gate or inside the building?
7  A    No, outside the parking area, and we're talking about
8  an area that's, you know, roughly 1,000 acres.  It's very
9  large.
10 Q    Okay.
11 A    Uh-huh.
12 Q    And then shortly thereafter, everybody leaves, correct?
13 A    After he entered the location?
14 Q    Yes, sir.
15 A    Yes, everybody did leave at a point.
16 Q    Okay.  And thereafter he was stopped by a trooper?
17 A    He was.
18 Q    And when he was stopped by the trooper, he had no
19 weapons on him; is that correct?
20 A    No search of the vehicle was done, no, sir.  We didn't
21 recover any firearms.
22 Q    Okay.  And then he was released?
23 A    That's correct.
24 Q    Okay.  So just to recap that, no weapons, lookout,
25 according from your perspective, just a lookout, right?

1  A    That's correct.  That's what it appeared that day.
2  Q    And did not evade the trooper and was cooperative and
3  had no weapons or any other illegal substances
4  A    On the day of the 27th, that's correct.  Yes, sir.
5  Q    Yes, sir.
6          MR. MERCHANT:  Thank you, sir.
7          THE WITNESS:  Yes, sir.
8          THE COURT:  Let me ask:  Is he charged in Count 4,
9  too?  Is he charged with a 924(c) offense, or not?
10         MR. PARADISO:  I believe so, yes, Your Honor.
11         THE COURT:  Okay.  He is?  Okay.  Let me just --
12 can I just see the Indictment?  I thought I had it in front
13 of me.
14     (Pause in the proceedings.)
15         MR. PARADISO:  Apologies, I don't have it.
16         THE COURT:  Do you have it?  Could I see yours,
17 Mr. -- thank you.
18         You can step down.  Thank you, sir.
19         THE WITNESS:  Yes, sir.
20     (Witness steps down.)
21         THE COURT:  Okay.  Mr. Merchant, tell me what
22 you'd like to proffer?
23         There it is.
24         What would you like to proffer or what would you
25 -- tell me what you'd like to proffer?

1    MR. MERCHANT: I believe everything that is --
2 well, first, the Pretrial Services Report on page 5 states
3 that he has a bond forfeiture on August 4th, 2023.
4    THE COURT: Okay.
5    MR. MERCHANT: He was put in Harris County Jail on
6 July 28th, 2023, so he was in custody.
7    THE COURT: So what I think they're talking about,
8 not the bond forfeiture, I think they're talking about the
9 probation that his -- that this arrest forfeited -- or not
10 forfeited, but violated his probation from. He was
11 sentenced on February 16th, 2022, two years probation. And
12 then it says August 4th, 2023, motion to adjudicate
13 (indiscernible) due to new law violation.
14    So I think what they're referring to is not the
15 bond -- I mean, I agree with you. So let me just say that I
16 agree with you.
17    MR. MERCHANT: The reason why I'm saying that is
18 just to highlight that he's not a flight risk in that he did
19 show up in court every time required.
20    THE COURT: Right. I know, and so in this case,
21 my issue is not risk of flight. It's danger to the
22 community, so you know that -- you know, he's been here for
23 six years.
24    There's other issues that we can discuss, but it's
25 not -- to me, it's not a risk of flight.

1         MR. MERCHANT: Okay. And my position on the State
2 cases is that they're just allocations. I am appointed to
3 represent him in State Court, and we are going through the
4 process.
5         THE COURT: Right, okay. Is there anything else
6 that you'd like to proffer to me?
7         MR. MERCHANT: Just to highlight, if I may, Judge?
8         THE COURT: Go ahead, yeah. Go, yes.
9         MR. MERCHANT: Is that in the report they had
10 spoken to his aunt with whom he was staying and will
11 continue to stay, and I have spoken to her and she will make
12 sure he shows up in court and she's an individual that
13 posted the bond in State Court.
14         And that's it.
15         THE COURT: Okay. So let me -- is his family here
16 today, too? Are they? I don't know who's here. Is it the
17 people behind?
18         MR. MERCHANT: Yes.
19         THE COURT: So, ma'am, you can sit down.
20         So this is the -- and I addressed a co-Defendant
21 earlier. The sadness in these cases -- I know we're here
22 today on the bond and whether he gets a bond or not is
23 really important to you, but the bigger picture in this case
24 -- and I told one of the co-Defendants is this: Is that,
25 you know, these gentlemen have been involved in other crimes

in their life and they haven't faced the federal system and they haven't faced serious time.

This is really a serious case and I know that to some people -- this is just my opinion -- what the Government did is perfectly fine. They get information that someone wants to commit a crime, so then they set up -- they set up a sting, in essence.

And so this wasn't -- they had information that these folks wanted to rob a stash house, so they set that up and they come up with a drug amount, and there really wasn't a stash house, but they get the whole case on video and audio and so it makes it really hard for the defense attorneys to defend it when it's all on audio and video.

But the main thing is they're facing a mandatory minimum of at least ten years and then because there's a gun offense, that's a five-year consecutive time. So even if they receive the lowest level sentence in here if they're convicted, they're looking at serving a minimum of 15 years in federal prison and then the federal way, it's you only take off 15 percent.

And so before I was on the bench here, I was a prosecutor for many years, but I was also a defense attorney. I did a lot of pro bono cases. I represented a gentleman like your loved one that had been in prison 15, 20, 25 years. It really changed their life. But you know,

1 faced one of these cases.

2 And so that's to me really the big picture and the 3 saddest one is what he's really looking at. But as far as 4 this case, like is said, this is a serious case. There's 5 guns, there's drugs involved, but the thing for me is why my 6 decision will be to detain him is because he was serving a 7 sentence -- he had already been convicted in 2021 for a 8 felony evading arrest detention, so this all happens -- this 9 all happens while he's serving probation in that case.

10 And in this case we're not even talking about just 11 the alleged thing that the Government was involved in a 12 sting. There's also when he was arrested, if I'm reading 13 the Government's proffer right, you know, they were out 14 looking to potentially rob ATM machines and then when he was 15 arrested in this case, it didn't even go smoothly.

16 He evaded arrest and we've all seen how these 17 things can turn really violent when people aren't -- when 18 they're fleeing from the police.

19 And so I don't believe based on that, that he's 20 rebutted the presumption in this case because of his 21 criminal history and my decision will be to detain him.

22 Mr. Merchant, did you want to say anything else to 23 me?

24 MR. MERCHANT: No, sir.

25 THE COURT: Okay. Good luck, sir.

1    Thank you.
2    (Proceedings concluded at 9:59 a.m.)
3                    * * * * *
4    *I certify that the foregoing is a correct*
5    *transcript to the best of my ability produced from the*
6    *electronic sound recording of the ZOOM/telephonic*
7    *proceedings in the above-entitled matter.*
8    */S/ MARY D. HENRY*
9    *CERTIFIED BY THE AMERICAN ASSOCIATION OF*
10   *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*
11   *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*
12   *JTT TRANSCRIPT #69210*
13   *DATE FILED:  OCTOBER 16, 2024*
14
15
16
17
18
19
20
21
22
23
24
25